UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES COMMODITY FUTURES TRADING COMMISSION, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) )   Case No. 4:11-CV-311 (CEJ) ) |
| RANDALL LYNN STUCKEY, et al., | ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on plaintiff's motion for the imposition of a civil monetary penalty upon the defendants in the amount of $250,000.

On October 27, 2010, defendant Randall Lynn Stuckey pleaded guilty to one count of mail fraud and one count of making false reports and statements in connection with the sale of commodities, arising from the trading of off-exchange foreign currency futures contracts.  See United States v. Randall Lynn Stuckey, 4:10-CR-444 (CEJ).  On February 7, 2011, he was sentenced to two terms of 36 months imprisonment, to be served concurrently, and was ordered to pay $2,298,454 in restitution.  Forfeited assets in the amount of $919,825.23 were applied to the restitution.

On February 18, 2011, the United States Commodity Futures Trading Commission filed this action against Stuckey and three business entities he created and which operated in concert with him as a common enterprise (the "Stuckey Common Enterprise").[1]  [Doc. #1].  The CFTC alleges that the defendants violated the

---

[1]Stuckey Group, L.P., Stuckey Group II, L.P., and Oakwood Development Company, L.P.

Commodities Exchange Act[2] by falsely making false representations to customers and potential customers, concealing losses from customers, and issuing false monthly statements showing returns on investments.

On April 27, 2011, the Court entered a consent order of permanent injunction and ancillary equitable relief against the Stuckey defendants.  [Doc. #7].  In this document, defendants admitted that, between January 1, 2007, and July 31, 2010, they received approximately $2.87 million from more than 65 members of the general public to invest in foreign exchange futures.  Id. ¶¶ 8, 13.  Defendant Stuckey used a portion of the money he received from investors to support his family.  Id. ¶ 18.  Defendants suffered substantial trading losses but falsely represented to investors that their investments had increased in value from an original aggregate amount of $2.87 million to approximately $4.8 million.  Id. ¶ 20.  They issued monthly statements that falsely reported trading profits and concealed losses.  Id. ¶ 21.  In addition to the criminal penalties already imposed, defendants are permanently enjoined from trading on any registered entity and entering into any transactions involving commodity futures for their account or on behalf of any other person.  The defendants agreed that they were subject to disgorgement, restitution, and a civil monetary penalty in amounts to be determined either by agreement of the parties or by the Court.

The CFTC now moves for the imposition of a civil monetary penalty.[3]  Pursuant to the Commodity Exchange Act, as amended and to be codified at 7 U.S.C. § 13a-1(d)(1), in conjunction with 17 C.F.R. § 143.8, the Court may impose a civil monetary

---

[2] 7 U.S.C. §§ 6b(a)(2)(i)-(iii) (for conduct occurring before June 18, 2008) and §§ 6b(a)(2)(A)-(C) (for conduct occurring on or after June 18, 2008).

[3] The CFTC has decided not to seek an order of disgorgement or restitution.

penalty of not more than $130,000 for each violation of the Act occurring between January 1, 2007 and October 22, 2008, and $140,000 for each violation occurring between October 23, 2008 and July 31, 2010, or triple the monetary gain.

"Sanctions imposed . . . should be commensurate with the gravity of the violation." In the Matter of Solomon Mayer, et al., CFTC No. 92-21, 1998 WL 80513, *30 (Feb. 25, 1998).  Serious violations warrant the imposition of substantial civil monetary penalties. Id. "[E]ffective deterrence occurs when it is no longer worthwhile for a wrongdoer to risk engaging in acts that threaten the integrity of the markets." Id. at *31.  Relevant factors include "the nature of the violations, the existence of any injuries inflicted on others by reason of these violations, and a review of the sanctions imposed in the past for similar violations."  In the Matter of GNP Commodities, Inc., et al., CFTC No. 89-1, 1992 WL 201158, *20 (Aug. 11, 1992).  Ability to pay is not a relevant factor in determining the amount of a civil monetary penalty.  In the Matter of Steven G. Soule, et al., CFTC No. 99-4, 2005 WL 1993860, *5 (Aug. 17, 2005).

The Court agrees that a civil monetary penalty is appropriate in this case. However, plaintiff has not provided the Court with sufficient information to determine whether $250,000 is the appropriate penalty to impose in this case.  Plaintiff argues that defendants' gains would support the imposition of a much higher penalty.  Plaintiff has not quantified the monetary gain, however, beyond noting that defendant Stuckey argued in the criminal proceedings that the loss calculation for the purposes of the sentencing guidelines should be between $400,000 and $1,000,000.  The Court is not convinced that loss calculation and amount of gain are the same thing.  Also lacking from the present motion is "a review of the sanctions imposed in the past for similar violations."  See GNP Commodities, *supra*.  The plaintiff will be given the opportunity

to supplement its motion by providing additional information to aid in the determination of the appropriate penalty.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff shall have until **January 10, 2012**, in which to file a supplement to its motion for civil monetary penalty.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 8th day of December, 2011.