UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES COMMODITY FUTURES TRADING COMMISSION, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 4:11-CV-311 (CEJ) ) |
| RANDALL LYNN STUCKEY, et al., | ) ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on plaintiff's motion for imposition of civil monetary penalty in the amount of $250,000. On December 8, 2011, the Court directed plaintiff to provide additional information to aid in determining the appropriate penalty. Plaintiff has supplied the requested information. Defendants have filed a response to the motion.[1]

### I. Background

On October 27, 2010, defendant Randall Lynn Stuckey pleaded guilty to one count of mail fraud and one count of making false reports and statements in connection with the sale of commodities, arising from the trading of off-exchange foreign currency futures contracts. See United States v. Randall Lynn Stuckey, 4:10-CR-444 (CEJ). On February 7, 2011, he was sentenced to concurrent terms of 36

---

[1]Pursuant to the terms of a consent order in this matter, defendants are precluded from arguing that they did not commit the violations alleged in the complaint. Consent order, Section VII.9. [Doc. #7]. In their response, the enterprise defendants state that they do not object to the imposition of the penalty; individual defendant Stuckey notes that at sentencing he was found to be unable to pay a fine and requests a lesser penalty against him individually.

months' imprisonment and was ordered to pay $2,298,454 in restitution. Forfeited assets in the amount of $919,825.23 were credited to the restitution.

On February 18, 2011, the United States Commodity Futures Trading Commission filed this action against Stuckey and three business entities he created and that operated in concert with him as a common enterprise.[2] [Doc. #1]. The Commission alleges that, between January 1, 2007 and July 31, 2010, the defendants violated the Commodity Exchange Act[3] by making false representations to customers and potential customers, concealing losses from customers, and issuing false monthly statements.

On April 27, 2011, the Court entered a consent order of permanent injunction and ancillary equitable relief against the defendants. [Doc. #7]. As reflected in the order, the defendants admitted that, between January 1, 2007, and July 31, 2010, they received approximately $2.87 million from more than 65 members of the general public to invest in foreign exchange futures. Id. ¶¶ 8, 13. Defendant Stuckey used a portion of the money he received from the investors to support his family. Id. ¶ 18. Defendants suffered substantial trading losses but falsely represented to investors that their investments had increased in value from an original aggregate amount of $2.87 million to approximately $4.8 million. Id. ¶ 20. They issued monthly statements that falsely reported trading profits and concealed losses. Id. ¶ 21. In addition to the criminal penalties already imposed, defendants are permanently enjoined from trading on any registered entity and entering into any transactions involving commodity

---

[2]Stuckey Group, L.P., Stuckey Group II, L.P., and Oakwood Development Company, L.P.

[3]7 U.S.C. §§ 6b(a)(2)(i)-(iii) (for conduct occurring before June 18, 2008) and §§ 6b(a)(2)(A)-(C) (for conduct occurring on or after June 18, 2008).

futures for their account or on behalf of any other person. The defendants agreed that they were subject to disgorgement, restitution, and a civil monetary penalty in amounts to be determined either by agreement of the parties or by the Court. The Commission now moves for the imposition of a civil monetary penalty.[4]

## II. Discussion

The Court may impose a civil monetary penalty "in the amount of not more than the greater of $100,000 or triple the monetary gain to the person for each violation" of the Act. 7 U.S.C.A. § 13a-1(d)(1). Federal regulations promulgated pursuant to the statute allow for the civil penalty to be adjusted for inflation. Thus, the statutory penalty is $130,000 for each violation occurring between January 1, 2007 and October 22, 2008, and $140,000 for each violation occurring between October 23, 2008 and July 31, 2010. 17 C.F.R. § 143.8. Each of the false statements the defendants made to the investors constitutes a separate violation of the Act. As such, the $250,000 penalty the Commission seeks is well within the statutory limit.[5]

In order to determine whether $250,000 is an appropriate penalty, the Court considers the gravity of the violations, the particular aggravating or mitigating circumstances, penalties imposed in similar cases, and the goal of general deterrence. R&W Tech. Servs. Ltd. v. CFTC, 205 F.3d 165, 177 (5th Cir. 2000). Ability to pay is not a relevant factor in determining the amount of a civil monetary penalty. In the Matter of Steven G. Soule, et al., CFTC No. 99-4, 2005 WL 1993860, *5 (Aug. 17, 2005).

---

[4]The Commission has decided not to seek an order of disgorgement or restitution.

[5]Because the defendants acknowledge receiving gains in excess of $650,000, the "monetary gain" measure supports the Commission's proposed penalty as well.

Serious violations warrant the imposition of substantial civil monetary penalties. "Sanctions imposed . . . should be commensurate with the gravity of the violation." In the Matter of Solomon Mayer, et al., CFTC No. 92-21, 1998 WL 80513, *30 (Feb. 25, 1998). "The general seriousness of a violation derives primarily from its relationship to the various regulatory purposes of the Commodity Exchange Act. Conduct that violates core provisions of the Act's regulatory system -- such as manipulating prices or defrauding customers should be considered very serious even if there are mitigating facts and circumstances." JCC, Inc. v. Commodity Futures Trading Comm'n, 63 F.3d 1557, 1571 (11th Cir. 1995) (quoting In re Premex, [1987-1990 Transfer Binder] ¶ 24,165 at 34,890 to 34,891 (CFTC Feb. 17, 1988)). In this case, there is little doubt that defendants committed very serious violations of the Act: They made false statements to induce friends and acquaintances to make investments in the first place. They then concealed trading losses from their investors by issuing false monthly account statements that showed inflated account values and returns on deposit; these inflated values supported defendants' collection of fees on the false "increases" and lulled investors into assuming their investments were safe. These actions in furtherance of carrying out and concealing the scheme constitute serious violations and warrant a substantial monetary penalty.

The Commission identifies Stuckey's behavior following the fraud as a mitigating factor to be considered in determining the appropriate penalty. Stuckey revealed his criminal conduct before he dissipated all of the funds in the investor accounts. As a result, more than $900,000 was forfeited to the government and was available to mitigate the losses to defendants' victims. His cooperation facilitated the return of funds to the investors.

The Commission also asserts that the proposed penalty is consistent with those ordered in other recent cases involving fraudulent foreign exchange schemes. In <u>In the Matter of Scarboro</u>, CFTC No. 11-222, 2011 WL 4000915 (CFTC Sept. 1, 2011), the Commission accepted a settlement offer that included a $350,000 penalty from an individual who traded on the foreign exchange market. He lost $597,000 of the $713,000 he received from investors. In <u>In the Matter of Darren L. Shanks</u>, CFTC No. 11-03, 2011 WL 244119 (CFTC Jan. 7, 2011), the trader concealed his prior conviction for embezzlement. He and his company accepted $3.3 million for trades on the foreign exchange market. He lost or misappropriated all but $30,000 of the invested funds. The Commission accepted an offer of settlement that included a $500,000 penalty for him and a $750,000 penalty for his investment company. The penalties imposed in these cases are larger than that requested here, however, the traders lost a much larger share of the investors' funds before they were stopped. The Court concludes that the $250,000 penalty the Commission seeks in this case is consistent with the above cases.

The final factor the Court is directed to consider is deterrence. "[E]ffective deterrence occurs when it is no longer worthwhile for a wrongdoer to risk engaging in acts that threaten the integrity of the markets." <u>Solomon Mayer</u> at *31. In this case, the Court finds that the proposed penalty is consistent with the goal of deterring similar conduct.

In light of the serious nature of defendants' violation of the Commodity Exchange Act and after due consideration of the relevant factors, the Court concludes that the penalty sought by the Commission is appropriate.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for imposition of civil monetary penalty in the amount of $250,000 against defendants [Doc. #10] is **granted**.

**IT IS FURTHER ORDERED** that the plaintiff shall have until **June 25, 2012**, to submit a proposed order for consideration by the Court.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 12th day of June, 2012.